José de Jesús Rivera, State Bar No. 004604
Zubin M. Kottoor, State Bar No. 035778
**Miller, Pitt, Feldman & McAnally, P.C.**
2800 North Central Avenue, Suite 840
Phoenix, Arizona 85004
Telephone: (602) 266-5557
jrivera@mpfmlaw.com
zkottoor@mpfmlaw.com

James F. McDonough, III (GA 117088)
(pro hac vice forthcoming)
**Rozier Hardt McDonough PLLC**
659 Auburn Avenue NE, Unit 254
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

*For Plaintiff Fleet Connect Solutions LLC*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Fleet Connect Solutions, LLC;<br><br>Plaintiff,<br><br>v.<br><br>GPS Insight, Inc.;<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Fleet Connect Solutions LLC ("Fleet Connect" or "Plaintiff") files this Original Complaint against GPS Insight, Inc. ("GPS Insight" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1. This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"):

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 1 | 6,647,270 | Vehicletalk | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270/ |
| 2 | 6,961,586 | Field Assessments Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6961586/ |
| 3 | 7,123,926 | System and Method For Providing Information to Users Based on the User's Location | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7123926/ |
| 4 | 7,206,837 | Intelligent Trip Status Notification | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7206837/ |
| 5 | 7,593,751 | Conducting Field Operations Using Handheld Data Management Devices | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7593751/ |

|   | U.S. Patent No. | Title | Available At |
|---|---|---|---|
| 6 | 7,741,968 | System and Method For Navigation Tracking of Individuals In a Group | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7741968/ |
| 7 | 7,783,304 | Wireless Communication Method | https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7783304/ |

2.     Plaintiff seeks injunctive relief and monetary damages.

**PARTIES**

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.     GPS Insight is a corporation organized under the laws of the State of Maryland with its principal place of business located at 7201 E. Henkel Way, Suite 400, Scottsdale, Arizona, 85255.

5.     GPS Insight may be served through its registered agent for service, OSBORN MALEDON, P.A., located at 2929 N. Central Avenue, Suite 2100, Phoenix, Arizona 85012.

**JURISDICTION AND VENUE**

6.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under

35 U.S.C. §§ 271, 281, and 284–85, among others. This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.     Venue is proper against Defendant in this District pursuant to 28 U.S.C. §§ 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District. *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

9.     Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.

10.     Defendant is subject to this Court's specific and general personal jurisdiction under due process and/or the Arizona Long Arm Statute due at least to Defendant's substantial business in this judicial district, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly transacting, doing, and/or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Arizona and in this District.

11.     Specifically, Defendant intends to do and does business in, and has committed acts of infringement in this District directly, and through intermediaries, and offered its products or services, including those accused of infringement here, to customers and potential customers located in Arizona, including in this District.

12.     Defendant maintains regular and established places of business in this District.

13.     For example, Defendant owns, operates, manages, conducts business, and directs and controls the operations and employees of facilities at several locations in this District.

14.     Defendant maintains its principal place of business in this District.

15.     Defendant has committed and commits acts of infringement from its places of business in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

16.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.     Based upon public information, Defendant owns, operates, advertises, and/or controls the website https://www.gpsinsight.com through which it advertises, sells, offers to sell, provides, and/or educates customers about its products and services.

18.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes fleet management platform and tracking solution systems.

19.     Defendant manufactures, uses, causes to be used, sells, offers for sale, provides, supplies, or distributes the 1) Asset Tracking Devices, including: TT-1800, TT-3000, TT-2200, ST-610, ST-600, ST-1100, ST-1200, TT-600, TT-610, PNP-3000, AT-3000; 2) Camera Solutions, including: Driveri, Driveri D-215, Driveri D-

210, Driveri D-430, Driveri Hub-X, Drive360, AIR II, Driveri D-450; 3) ELDs/Vehicle Tracking Devices, including: GPSI-3900I, GPSI-3900E, GPSI-5000, GPSI-4000, ELD-2000/4000, PNP-2000, ELD-2000, ELD-2000D, ELD-5000, GO9™, XT25 Series; and 4) GPSI Tablets, including: GPSI Connect Tablet, and GPSI Connect Tablet 2, and associated hardware, software, applications, and functionality (collectively, the "Accused Products").

20.    The Accused Products perform wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11ac, 802.11b, and 802.11n.

21.    The Accused Products perform singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM symbols.

22.    The Accused Products also track, analyze, and report vehicle maintenance needs and driver warnings associated with a vehicle, tracks or causes to be tracked vehicle locations, and allows for communication between a system administrator and a remote unit to communicate, *e.g.*, advisory notifications.

23.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I: INFRINGEMENT OF U.S. PATENT NO. 6,647,270**

24.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

25.     The USPTO duly issued the '270 patent on November 11, 2003, after full and fair examination of Application No. 09/659,074 which was filed September 11, 2000.  *See* '270 patent at 1.  A Certificate of Correction was duly issued on July 27, 2004. *Id*. at 17.  A second Certificate of Correction was duly issued on September 24, 2013. *Id*. at 18.

26.     Fleet Connect owns all substantial rights, interest, and title in and to the '270 patent, including the sole and exclusive right to prosecute this action and enforce the '270 patent against infringers and to collect damages for all relevant times.

27.     The claims of the '270 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

28.     The written description of the '270 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim

limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

29.     Upon information and belief, Defendant has directly infringed one or more claims of the '270 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

30.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent. For example, the Accused Products included a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes:  a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver

information includes: the address of the desired remote unit.

31.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

32.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 6,961,586

33.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

34.    The USPTO duly issued the '586 patent on November 1, 2005 after full and fair examination of Application No. 09/955,543 which was filed on September 17, 2001. *See* '586 patent at 1.

35.    Fleet Connect owns all substantial rights, interest, and title in and to the '586 patent, including the sole and exclusive right to prosecute this action and enforce the '586 patent against infringers and to collect damages for all relevant times.

36.    The claims of the '586 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed

inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

37.    The written description of the '586 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

38.    Upon information and belief, Defendant has directly infringed one or more claims of the '586 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

39.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 9 of the '586 patent.  For example, Defendant, through the use and provision of the Accused Products, performed a method of conducting a field assessment using a handheld data management device, comprising: providing a hand held data management device user performing as a field assessor access to an industry-specific field assessment program module for enabling the field assessor to execute at least one of the following field assessments: construction industry project analysis, HVAC system analysis; project management, equipment readiness, system and equipment

troubleshooting, remote inventory tracking and ordering, conducting legal investigations in the field, and multi-users remote function coordination; executing said program module to conduct the field assessment; providing field-specific information required by said program module for said program module to render data in support of said field assessment; and retrieving data through said handheld data management device in support of said field assessment.

40.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '586 patent.

41.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,123,296

42.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

43.     The United States Patent and Trademark Office ("USPTO") duly issued the '926 was issued on October 17, 2006 after full and fair examination by the USPTO of Application No. 10/679,784 which was filed on November 10, 2003.  *See* '296 patent, at 1.  A Certificate of Correction was issued on August 27, 2013.  *See*

*id.* at 19.

44.     Fleet Connect owns all substantial rights, interest, and title in and to, the '296 patent including the sole and exclusive right to prosecute this action and enforce the '296 patent against infringers and to collect damages for all relevant times.

45.     The claims of the '296 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of mobile communications system control and warning systems.

46.     The written description of the '296 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

47.     Upon information and belief, Defendant has directly infringed one or more claims of the '296 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

48.     Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '296 patent.  For example, Defendant, through the use and provision of the Accused Products, performs a method for transmitting voice or data communications between a

plurality of remote units. The method includes alerting a remote user to an emergency situation *via* a mobile unit installed in a vehicle, comprising determining a geographic location of the mobile unit, determining an identity of the vehicle based on a unique identification stored in the mobile unit, determining a priority level associated with the emergency situation, assembling a header of a communication, the header including the geographic location of the mobile unit, the identity of the vehicle and the priority level, the header capable of being processed upon receipt by a second mobile unit to alert the remote user of the second mobile unit of the emergency situation based on the geographic location of the mobile unit, the identity of the vehicle and the priority level, and transmitting the communication to the second mobile unit.

49.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '296 patent.

50.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above. Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,206,837

51.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

52.    The USPTO duly issued the '837 patent on April 17, 2007, after full and fair examination of Application No. 10/287,151 which was filed November 4, 2002. *See* '837 patent at 1.

53.    Fleet Connect owns all substantial rights, interest, and title in and to, the '837 patent including the sole and exclusive right to prosecute this action and enforce the '837 patent against infringers and to collect damages for all relevant times.

54.    The claims of the '837 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of voice and data communications systems.

55.    The written description of the '837 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

56.    Upon information and belief, Defendant directly infringed one or more claims of the '837 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing

of the Accused Products.

57.     Upon information and belief, Defendant directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '837 patent.  For example, Defendant, through the use and provision of the Accused Products, performed a method comprising receiving a location of a mobile communications device that is in transit to a destination, estimating the time-of-arrival bounds for said mobile communications device at said destination for a confidence interval based on said location and at least one historical travel time statistic, and sending the time-of-arrival bounds to said mobile communications device.

58.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '837 patent.

59.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 7,593,751**

60.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

61.     The USPTO duly issued the '751 patent on September 22, 2009, after full and fair examination of Application No. 11/262,699 which was filed October 31, 2005. *See* '751 patent at 1.

62.     Fleet Connect owns all substantial rights, interest, and title in and to the '751 patent, including the sole and exclusive right to prosecute this action and enforce the '751 patent against infringers and to collect damages for all relevant times.

63.     The claims of the '751 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting communication systems and methods for executing field operations using handheld devices.

64.     The written description of the '751 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

65.     Upon information and belief, Defendant has directly infringed one or more claims of the '751 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

66.    Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 6 of the '751 patent.  For example, Defendant, through the use and provision of the Accused Products, performed a method for managing data during a field operation using a handheld field data management device, comprising the steps of: providing a handheld field data management device to a user, said handheld field data management device configured to enable the user to manage data collected at a field operation location, wherein said field data management device includes: a memory containing at least one field data management program module for working with a microprocessor to process instructions enabling a handheld field assessment device user to find a field operation location, collect industry-specific data at the field operation location, and communicate in real-time with a remote server to transfer data to and from a remote server, obtain updated instructions or procedures, and for retrieving third party information useful for the field operation from the Internet; a microprocessor executing said at least one field data management program; a positioning module including GPS for determining handheld device location and configured to coordinate with mapping software to provide map directions to field operation locations; a display for viewing field related data, maps and third party information retrieved from the Internet; a user interface adapted for enabling the handheld data management device user to interact with said at least one field data management program; and a wireless communication module for providing communications

between the handheld field assessment device and the remote server, and for providing communications with third party resources from the Internet in support of field operations; enabling the user to access instructions including mapped directions from at least one of said field data management program and said remote sever to assist the user in finding a field operation location based on the location of the handheld field data management device; enabling the user to access instructions from said at least one field data management program to assist the user in collecting industry-specific data at the field operation location; and enabling the user to access instructions from said at least one field data management program to assist the user in communicating with a remote server using the handheld field data management device before, during and after the collection of industry-specific data at the field operation location.

67.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '751 patent.

68.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,741,968

69.     Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

70.     The USPTO duly issued the '968 patent on June 22, 2010 after full and fair examination of Application No. 12/143,707 which was filed on June 20, 2008. *See* '968 patent at 1.

71.     Fleet Connect owns all substantial rights, interest, and title in and to the '968 patent, including the sole and exclusive right to prosecute this action and enforce the '968 patent against infringers and to collect damages for all relevant times.

72.     The claims of the '968 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of systems and methods for permissive navigational tracking where the sending party selectively transmits navigation data to a receiving party over a period of time.

73.     The written description of the '968 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

74.    Upon information and belief, Defendant has directly infringed and continues to directly infringe one or more claims of the '968 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing the Accused Products.

75.    Upon information and belief, Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '968 patent. For example, Defendant, through the use and provision of the Accused Products, performs a method of tracking a plurality of portable devices, said method comprising: creating a select group of target portable devices in association with a master portable device; establishing at said master portable device the current geographical positions of said selected group of target portable devices; displaying on said master device said established geographical positions of each said target device; sending from said master device to at least one of said target devices, convergence navigational instructions designed to facilitate convergence between said at least one target device and said master device; and generating ETAs pertaining to said convergence between said one target device and said master device. include a computer readable medium having stored thereon computer executable code, said computer executable code.  The Accused Products include code for controlling a reception at a master mobile device of geographical positional data relating to a plurality of mobile devices; code for controlling said master mobile device to display received ones of said geographical positions of said

plurality of other mobile devices; code for causing said master mobile device to send convergence geographical data-to a selected one of said other mobile devices, said sent geographical data allowing said selected mobile device to converge with said master mobile device; wherein said geographical data comprises turn by turn instructions leading said selected mobile device to said master device; and wherein said code continuously generates an ETA for said selected mobile device to converge with said master mobile device.

76.     Since at least the time of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe the '968 patent by inducing others to directly infringe the '968 patent.

77.     Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, contractors, customers and/or potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '968 patent by providing or requiring use of the Accused Products.

78.     Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '968 patent, including, for example, claim 1.

79.     Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused

Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; distributing instructions that guide users to use the Accused Products in an infringing manner; and/or instructional and technical support on its website/dashboard.

80.    Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '968 patent and with the knowledge that the induced acts constitute infringement.

81.    Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '968 patent. Defendant's inducement is ongoing.

82.    Since at least the time of receiving the original complaint in this action, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '968 patent.

83.    Defendant has contributed and continues to contribute to the direct infringement of the '968 patent by its customers, personnel, and contractors.

84.    The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '968 patent, including, for example, claim 1.

85.    The special features constitute a material part of the invention of one or more of the claims of the '968 patent and are not staple articles of commerce suitable for substantial non-infringing use. Defendant's contributory infringement is

ongoing.

86.     Defendant had knowledge of the '968 patent at least as of the date when it was notified of the filing of this action.

87.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of Fleet Connect's patent rights.

88.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

89.     Defendant's direct infringement of the '968 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Fleet Connect's rights under the patent.

90.     Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '968 patent.

91.     Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

92.    Fleet Connect has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  Fleet Connect has and will continue to suffer this harm by virtue of Defendant's infringement of the '968 patent.  Defendant's actions have interfered with and will interfere with Fleet Connect's ability to license technology.  The balance of hardships favors Fleet Connect's ability to commercialize its own ideas and technology.  The public interest in allowing Fleet Connect to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 7,783,304

93.    Fleet Connect repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

94.    The USPTO duly issued U.S. Patent No. 7,783,304 (the "'304 patent") on August 24, 2010, after full and fair examination of Application No. 12/546,645, which was filed on August 24, 2009.  *See* '304 patent at 1.  A Certificate of Correction was issued on May 28, 2013.  *See id.* at 22.

95.    Fleet Connect owns all substantial rights, interest, and title in and to the '304 patent, including the sole and exclusive right to prosecute this action and enforce the '304 patent against infringers and to collect damages for all relevant times.

96.    The claims of the '304 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed

inventions include inventive components that improve upon the function and operation of preexisting systems and methods of wireless communication with a mobile unit.

97. The written description of the '304 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

98. Upon information and belief, Defendant has directly infringed one or more claims of the '304 patent by providing, supplying, using, causing to be used, distributing, importing, selling, offering for sale, and/or internal and external testing of the Accused Products.

99. Upon information and belief, Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '304 patent. For example, Defendant, through the use and provision of the Accused Products, performs a method of wirelessly communicating with a mobile unit. The method includes establishing a communication link between a first mobile unit and a website; searching a list of users via a log comprising an address of a second mobile unit; outputting a match comprising the address of the second mobile unit via a display; constructing a communication comprising a plurality of information fields, the plurality of information fields comprising an address of the first mobile unit and

the address of the second mobile unit; transmitting the communication from the first mobile unit, through the website, to the second mobile unit; and storing information related to the communication in a communication log.

100.    Fleet Connect or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '304 patent.

101.    Fleet Connect has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to Fleet Connect in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

102.    Fleet Connect hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

103.    Fleet Connect requests that the Court find in its favor and against Defendant, and that the Court grant Fleet Connect the following relief:

 a.    Judgment that one or more claims of each of the Asserted Patents has been infringed, either literally or under the doctrine of equivalents, by Defendant or others acting in concert therewith;

 b.    A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries,

parents, and all others acting in concert therewith from infringement of the '968 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '968 patent by such entities;

c.  Judgment that Defendant account for and pay to Fleet Connect all damages to and costs incurred by Fleet Connect because of Defendant's infringing activities and other conduct complained of herein;

d.  Judgment that Defendant's infringements of the '968 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.  That this Court declare this an exceptional case and award Fleet Connect its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.  All other and further relief as the Court may deem just and proper under the circumstances.

Date: <u>February 18, 2025</u>

Respectfully submitted,

<u>*s/ José de Jesús Rivera*</u>

José de Jesús Rivera, State Bar No. 004604
Zubin M. Kottoor, State Bar No. 035778
**MILLER, PITT, FELDMAN & MCANALLY, P.C.**
2800 North Central Avenue, Suite 840
Phoenix, Arizona 85004
Telephone: (602) 266-5557
Email: jrivera@mpfmlaw.com
Email: zkottoor@mpfmlaw.com

James F. McDonough, III (GA 117088) *
**ROZIER HARDT MCDONOUGH PLLC**
659 Auburn Avenue NE, Unit 254 r
Atlanta, Georgia 30312
Telephone: (404) 564-1866
Email: jim@rhmtrial.com

Attorneys for Plaintiff ***FLEET CONNECT SOLUTIONS LLC***

**pro hac vice* forthcoming